UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK,

                      Plaintiff,

-against-

E.L., by and through his parent A.L; and A.L.,
individually and on behalf of her son E.L.,

                      Defendants.

24-CV-1176 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

      The Board of Education of the City School District of the City of New York (the "DOE") brings this action under the Individuals with Disabilities Education Act ("IDEA") to challenge an administrative decision of the State Review Officer ("SRO") regarding payment for a student's religious education. Specifically, the SRO decision ordered the DOE to pay for kindergarten student E.L.'s education at a religious school, including classes on Judaism. The DOE now appeals that decision, citing federal regulations and constitutional provisions that prohibit the government from supporting religious indoctrination. The Court, however, finds that full tuition funding of E.L.'s classes does not endorse a religion and does not run afoul of federal regulations or the Constitution. Accordingly, the SRO's decision is affirmed.

## BACKGROUND

      In September 2022, E.L. was a five-year-old kindergartner student with a disability. ECF No. 19-1 ("IHO Dec.") at 3–4. The Committee on Special Education ("CSE") had convened on April 5, 2022, to develop an individualized education program ("IEP") for E.L., but because his parents believed the program was inadequate, they unilaterally enrolled E.L. at the Irving

Montak SINAI School at SAR Academy (the "SINAI School"). *Id.*; ECF No. 1-1 ("SRO Dec.") at 1–2. The SINAI School is a Jewish private school. ECF No. 19-8 at E-1; *About Us*, SINAI SCHOOLS, https://sinaischools.org/about-us/ [https://perma.cc/89RE-L2DC] (last visited Sept. 27, 2025). Its curriculum includes "language arts, mathematics, science, social studies, Hebrew language, and adaptive physical education." ECF No. 19-8 at E-1. On Tuesdays through Fridays, the class schedule also includes a thirty-minute to one-hour long session in the morning on Judaic Studies. *Id.* at G-1.

In March 2023, E.L.'s parents ("Parents") filed a due process complaint ("DPC") alleging that DOE failed to offer E.L. a free appropriate public education ("FAPE") for the 2022–2023 school year and sought full reimbursement for tuition and fees at the SINAI School. IHO Dec. at 3. The matter was assigned to an Impartial Hearing Officer ("IHO"), who held a pre-hearing conference and merits hearing and determined in May 2023 that the DOE had failed to offer E.L. a FAPE for the 2022–2023 school year. *Id.* at 3, 5, 10. The IHO also determined that the SINAI School was an appropriate placement for E.L. and ordered the DOE to fund the cost of tuition, minus the portion of the tuition that went to Judaic Studies. *Id.* at 8. In making this determination, the IHO reasoned that the Judaic Studies class is "nonsecular" and is thus non-reimbursable. *Id.* at 9.

Parents appealed the portion of the IHO's decision excluding funding for Judaic Studies. SRO Dec. at 1, 3. Specifically, Parents contended that the IHO failed to consider the finding in *Carson as next friend of O.C. v. Makin,* 596 U.S. 767 (2022), which held that a district's refusal to fund religious instruction could constitute a violation of the Free Exercise Clause and Equal Protection Clause of the Federal Constitution. *Id.* at 3. The DOE did not cross-appeal from the IHO's order to fund the placement at the SINAI School; rather, the DOE solely argued for

upholding the IHO's religious limitation on the reimbursement. *Id.* at 6. The DOE argued that funding Judaic Studies would violate federal regulation 34 C.F.R. § 76.532, which states that "[n]o State or subgrantee may use its grant or subgrant to pay for any . . . Religious worship, instruction, or proselytization." *Id.* at 7 (cleaned up). The DOE also argued that such funding would violate the Establishment Clause and the State Constitution. *Id.* at 6.

On appeal, the SRO examined, among other things, whether the skills taught in E.L.'s Judaic Studies classes were "transferable to his secular subjects[.]" *Id.* at 12 (internal citation omitted). The SRO noted testimony from the SINAI School director that Judaic Studies included the presentation of stories and that the teacher "'works on the reading comprehension and his expressive and receptive language,' as well as story sequencing and comprehension skills[.]" *Id.* (citing ECF No. 19-2 at 27:13–14). The SRO also noted testimony that the skills taught during Judaic Studies transferred to the English portions of the school day. *Id.* at 12–13. After a thorough survey of the available case law on the Establishment Clause and 34 C.F.R. § 76.532, the SRO concluded that under the particular facts of this case, funding for the Judaic Studies portions is not precluded by the Establishment Clause and that Parents are entitled to that reimbursement. *Id.* at 13.

On February 16, 2024, the DOE appealed the SRO decision to this Court, once again on the narrow issue of whether reimbursement is warranted for E.L.'s Judaic Studies. ECF No. 1. On September 13, 2024, the DOE moved for summary judgment. ECF No. 21. Parents oppose and cross-move for summary judgment. ECF No. 26. Once again, the DOE argues that funding for Judaic Studies would violate federal regulations, the New York State Constitution, and the Establishment Clause, and that the IDEA's "equitable considerations" prong warrants a reduction of the tuition award for Judaic Studies. *See generally* ECF No. 22 ("Mem."). Likewise, Parents

again contend that *Carson* prohibits the denial of funding for religious instruction in these circumstances. *See generally* ECF No. 28 ("Opp.").

## LEGAL STANDARD

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). "The district court therefore 'engages in an independent review of the administrative record and makes a determination based on a preponderance of the evidence.'" *Id*. (quoting *M.H.*, 685 F.3d at 240). In conducting this independent review, the court "must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id*. (quoting *M.H.*, 685 F.3d at 240). "On issues of law, however, such as the proper interpretation of the federal statute and its requirements, courts owe no deference to state hearing officers." *Bd. Of Educ. Of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (internal citation and quotation marks omitted).

## DISCUSSION

The Court will first address the DOE's argument that federal regulations and the State Constitution prohibit funding the Judaic Studies classes before examining the issue under the Establishment Clause and the "equitable considerations" prong of the IDEA.

The IDEA's implementing regulations state that "[n]o State or subgrantee may use its grant or subgrant to pay for . . . [r]eligious worship, instruction, or proselytization." 34 C.F.R.

§ 76.532(a)(1). Little has been said about this regulation, except that in 1993, the Supreme Court observed that this provision seems to "merely implement[] the Secretary of Education's understanding of (and thus is coextensive with) the requirements of the Establishment Clause." *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 7 n.7 (1993). The Second Circuit echoed this interpretation in 1996. *See Russman by Russman v. Sobol*, 85 F.3d 1050, 1056 (2d Cir. 1996) ("This regulation is coextensive with the Establishment Clause and does not create any separate regulatory limitation on IDEA."), *vacated on other grounds sub nom. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet, N.Y. v. Russman by Russman*, 521 U.S. 1114 (1997).

The DOE notes that since *Zobrest* and *Russman*, Supreme Court jurisprudence on the Establishment Clause has narrowed its limitations, suggesting that the IDEA's implementing regulations should no longer be interpreted as coextensive with the narrowed Clause. *See* Mem. at 7–8. Instead, the DOE urges to Court to follow the "plain meaning" of the federal regulation. *Id.* at 8. Similarly, the DOE urges the Court to apply a plain language reading of the New York State Constitution, which reads that "[n]either the state nor any subdivision thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any [religious school]." N.Y. CONST. art. XI § 3; Mem. at 12–16

The Court cannot do so, because a plain language reading of the federal regulation and the State Constitution would violate established Free Exercise principles. In *Espinoza v. Montana Department of Revenue,* the Supreme Court invalidated an interpretation of a Montana Constitution provision that prohibited all government aid, direct or indirect, to religious institutions. 591 U.S. 464, 488–89 (2020). In doing so, the Court reiterated that "disqualifying otherwise eligible recipients from a public benefit 'solely because of their religious character'

5

imposes 'a penalty on the free exercise of religion that triggers the most exacting scrutiny.'" *Id.* at 475 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 459 (2017)). "The Free Exercise Clause protects against even indirect coercion, and a State punishes the free exercise of religion by disqualifying the religious from government aid" in certain situations. *Id.* at 478 (cleaned up). Likewise, the Court again emphasized in *Carson* that "to 'disqualify some private schools' from funding 'solely because they are religious'" can be unconstitutional. *Carson*, 596 U.S. at 780 (quoting *Espinoza,* 591 U.S. at 487). Reading the federal regulation and the State Constitution to prohibit all funding for all religious instruction would render them contrary to *Espinoza* and *Carson*.

Moreover, as the SRO Decision notes, the New York State Constitution provision may not be applicable in this IDEA case at all. SRO Dec. at 7 n.4. That is because the same State Constitution also provides: "nothing in this constitution contained shall prevent the legislature from providing for the . . . education and support of the [disabled] . . . as it may deem proper[.]" N.Y. CONST. art. VII, § 8, cl.2. Although there is little case law guidance, the language of this latter provision appears to override any prohibition on funding a FAPE for a child with a disability.

That said, the Court agrees that the federal regulation, at least, might have broader limitations on the use of federal funding than the narrowed interpretation of the Establishment Clause today. It is unnecessary, however, to speculate about what those broader limitations might be. Both the Supreme Court and the Second Circuit have indicated that the federal regulation is coextensive with the interpretation of the Establishment Clause pre-dating the narrowed restrictions in *Trinity Lutheran Church* and its progeny. *See Zobrest*, 509 U.S. at 7 n.7; *Russman*,

85 F.3d at 1056. Those earlier cases on the Establishment Clause offer sufficient guidance for the inquiry here.

In concluding that funding for the Judaic Studies classes does not offend federal regulations, the New York State Constitution, or the Establishment Clause, the SRO Decision already examined a number of applicable supporting cases, dating from *Lemon v. Kurtzman*, 403 U.S. 602 (1971) to *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002). SRO Dec. at 7–10. On *de novo* review, this Court arrives at the same outcome.

As interpreted in cases contemporaneous to *Zobrest* and *Russman,* the Establishment Clause prohibits government inculcation or indoctrination of religious beliefs. *Agostini v. Felton*, 521 U.S. 203, 223–24 (1997) (examining cases); *Lemon v. Kurtzman*, 403 U.S. 602, 618–19 (1971), *abrogated by Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022), *as recognized by Groff v. DeJoy*, 600 U.S. 447, 460 (2023). "[T]he question whether governmental aid to religious schools results in governmental indoctrination is ultimately a question [of] whether any religious indoctrination that occurs in those schools could reasonably be attributed to governmental action." *Mitchell v. Helms*, 530 U.S. 793, 809 (2000). This question can often be answered by the principle of neutrality, with courts "upholding aid that is offered to a broad range of groups or persons without regard to their religion." *Id.* "If the religious, irreligious, and areligious are all alike eligible for governmental aid, no one would conclude that any indoctrination that any particular recipient conducts has been done at the behest of the government." *Id.* "Private choice also helps guarantee neutrality by mitigating the preference for pre-existing recipients that is arguably inherent in any governmental aid program," which "could lead to a program inadvertently favoring one religion or favoring religious private schools in general over nonreligious ones." *Id.* Thus, if aid goes to a religious institution "only as a result of

7

the genuinely independent and private choices of individuals," then such aid is said to be neutral. *Id.* (internal citation omitted). And where a program is neutral, the courts must "be sure that we do not inadvertently prohibit [the government] from extending its general state law benefits to all its citizens without regard to their religious belief." *Rosenberger v. Rector & Visitors of Univ. of Virginia,* 515 U.S. 819, 839 (1995) (alteration in original) (citing *Everson v. Board of Ed. of Ewing,* 330 U.S. 1, 16 (1947)).

This principle has been reiterated in cases like *Witters v. Washington Department of Services for the Blind,* where the Supreme Court held that the petitioner could use a state vocational rehabilitation program to finance his training to become a pastor, because the aid came from a neutral program and the religious use was due to the "genuinely independent and private choices of [the] aid recipients." 474 U.S. 481, 488 (1986). Likewise, in *Zelman v. Simmons-Harris*, the Supreme Court emphasized that Ohio's school voucher program was constitutional as a program that "permits government aid to reach religious institutions only by way of the deliberate choices of numerous individual recipients." 536 U.S. 639, 652 (2002). That is because the "incidental advancement of a religious mission, or the perceived endorsement of a religious message, is reasonably attributable to the individual recipient, not to the government, whose role ends with the disbursement of benefits." *Id.*

Here, there is no dispute that the IDEA's guarantee of a FAPE and reimbursement for tuition at an appropriate school is a neutral program. There is no dispute that funding appropriately provided under that program adheres to federal regulations and the Constitution. The DOE, however, appears to argue that the Judaic Studies classes are not covered by that neutral program—that they are unnecessary religious instruction falling outside the IDEA educational guarantee. This issue is best resolved with an understanding of what a child of E.L.'s

8

age needs to obtain a FAPE and whether the absence of his enrollment in Judaic Studies classes would prevent him from obtaining that FAPE. In other words, this question implicates educational expertise that is best left to the administrative officers. In that regard, the Court is persuaded to defer to the SRO's determination on the matter. *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240–41 (2d Cir. 2012).

     Even without that deference, the Court finds that the Judaic Studies classes are a core part of E.L.'s FAPE. The SINAI School director testified that Judaic Studies classes work on reading comprehension skills, and expressive and receptive language skills. ECF No.19-2 at 27:13–14. Moreover, the classes comprise a key part of the school day, taking place for thirty minutes to an hour in the morning, between other classes such as language studies, art therapy, and educational therapy. See ECF No. 19-8 at G-1. For a five-year-old, these are critical periods of learning and development. To deny funding for these specific class periods would effectively exclude the child from these periods of learning.

     For these same reasons, the Court rejects the DOE's argument that the IDEA's "equitable considerations" prong warrants a reduction in the tuition award. Mem. at 9–12. The IDEA only requires that school districts pay for "expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370–71 (1985). But in support of their argument, DOE only cites to cases where reimbursement was reduced for extraneous school services, such as boarding services, weekend services, and after-school services. Mem. at 10. Here, as explained above, the Judaic Studies classes are a part of E.L.'s core curriculum. It would be more inequitable to deny E.L. funding for those classes, in effect excluding him from key development

periods—or coercing Parents to select a different school offering no comparable religious periods.

Indeed, Parents' argument that Free Exercise principles require the DOE to fund Judaic Studies classes in this situation might have merit. *See Espinoza,* 591 U.S. at 478 ("The Free Exercise Clause protects against even indirect coercion, and a State punishes the free exercise of religion by disqualifying the religious from government aid[.]" (cleaned up)). For example, in *Loffman v. California Department of Education*, the Ninth Circuit observed that under the DOE's position, religious schools which might be "equally or better qualified than secular ones to provide special education and related services" may be disqualified as choices for families "solely because they are owned, operated, controlled by, or formally affiliated with a religious group or sect, whatever might be the actual character of the education program or the primary purpose of the facility." 119 F.4th 1147, 1167–68 (9th Cir. 2024) (internal citation omitted). "As a result, families like the [Parents] who would otherwise advocate for placement in religiously affiliated [schools] are unable to do so—solely because of the would-be [school's] religious affiliation." *Id.* at 1168. This amounts to a "tendency to coerce" families "into acting contrary to their religious beliefs," which is a burden on free exercise rights. *Id.* (internal citation omitted).

It is unnecessary, however, to determine whether the Free Exercise Clause requires funding. The basis of the IHO's denial of funding for Judaic Studies classes was that the classes are "nonsecular," which is a rationale predicated on the Establishment Clause and related regulations. *See* IHO Dec. at 9. Having determined that there is no violation of the Establishment Clause, the State Constitution, or federal regulations, the IHO denial lacks ground to stand upon. The SRO was correct to reverse that portion of the IHO Decision.

10

## CONCLUSION

For the foregoing reasons, the DOE's motion for summary judgment is DENIED and the Parents' motion for summary judgment is GRANTED. The SRO Decision is AFFIRMED. The Clerk of Court is directed to terminate ECF Nos. 21 and 26, enter judgment consistent with this Order, and to CLOSE the case.

Dated: September 30, 2025
      New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge